UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PACIFIC SURVEY GROUP, LLC,

    Plaintiff /
    Counter-Defendant,

  v.

TYCHE HIGH SEAS CAPITAL
CORP., et al.,

    Defendants /
    Counter-Claimants.

CASE NO. C21-1712JLR

ORDER

## I.  INTRODUCTION

Before the court are (1) Plaintiff/Counter-Defendant Pacific Survey Group, LLC's ("PSG") motion for summary judgment (PSG Mot. (Dkt. # 32); PSG Reply (Dkt. # 44)); and (2) Defendant/Counter-Claimant Tyche High Seas Capital Corp.'s ("Tyche") combined opposition to PSG's motion for summary judgment and cross-motion for dismissal on mootness grounds (Cross-Mot. (Dkt. # 42)).  PSG opposes Tyche's

1    cross-motion for dismissal.  (Cross-Mot. Resp. (Dkt. # 47).)  The court has considered the

2    motions, all materials filed in support of and in opposition to the motions, the relevant

3    portions of the record, and the governing law.  Being fully advised,[1] the court DENIES

4    Tyche's motion to dismiss and GRANTS PSG's motion for summary judgment.

5                        **II.    BACKGROUND[2]**

6          This case arises from a time charter agreement ("Charter") between PSG, the

7    owner of the research vessel R/V OCEAN TITAN, and Tyche, the charterer of that

8    vessel.  (*See generally* Compl. (Dkt. # 1).)  Tyche chartered the R/V OCEAN TITAN,

9    together with its remote operated vehicle ("ROV"), for the purpose of surveying the

10   wreck and, if possible, recovering the cargo of the S/S ISLANDER, which was lost off

11   the coast of Alaska in 1901 while carrying a cargo of gold.  (McLean Decl. (Dkt. # 33)

12   ¶ 3(ii), Ex. 2 ("Charter")); *see Yukon Recovery v. Certain Abandoned Prop.*, Nos.

13   A96-0270-CV (HRH), A96-0304-CV (HRH), 1998 WL 965985, at *1-3 (D. Alaska Aug.

14   28, 1998) (setting forth findings of fact regarding the loss of the S/S ISLANDER and its

15   cargo).

16         PSG and Tyche entered into the Charter on November 22, 2019.  (Charter at 4.)

17   The Charter provided for a hire rate of $33,700 per day, plus a mobilization fee of

18

19         [1] Neither party has requested oral argument (*see* Mot. at 1; Cross-Mot. at 1) and the court
     finds that oral argument would not be helpful to its resolution of the motion, *see* Local Rules
     W.D. Wash. LCR 7(b)(4).

20

21         [2] Tyche relies solely on its assertion that this matter is moot in opposing PSG's motion
     for summary judgment; it does not respond substantively to PSG's arguments in favor of
     summary judgment, nor does it identify any facts that are in dispute.  (*See generally* Cross-Mot.)

22   Therefore, this recitation of background facts is drawn solely from PSG's summary judgment
     materials.

$250,000[3] and a two-day maximum demobilization fee at $33,700 per day. (*Id.* at 1-2, ¶¶ 20, 12, 15.) Delivery of the vessel was to occur on November 29, 2019, and the Charter was to end no later than December 20, 2019. (*Id.* at 1, ¶¶ 5, 10.) Payment of any invoiced amounts was due within 30 days and unpaid sums were to accrue interest at the rate of 12% per annum. (*Id.* at 3, ¶¶ 24-25.) The parties agreed that, in the event of a dispute arising out of the Charter, the substantially prevailing party was entitled to recover its reasonable legal fees and costs. (*Id.* at 29.) The Charter could be modified only by a written amendment signed by both parties. (*Id.* at 30, ¶ 41.)

PSG delivered the R/V OCEAN TITAN to Tyche on November 29, 2019, and Tyche used the vessel and its equipment through December 20, 2019. (McLean Decl. ¶ 3(iii), Ex. 3 ("Marek Dep.") at 71:1-5, 106:3-8, 163:11-14 (acknowledging that the survey voyage lasted for 20 days, between November 29 and December 20, 2019).) Tyche's Vice President of Marine Technology, Gene Marek, testified that the vessel operated satisfactorily during the expedition and the equipment needed was on board. (*Id.* at 33:9-18, 59:21-23, 67:21-68:12.) No one from Tyche notified PSG at any time during the Charter that PSG's performance was substandard. (*Id.* at 89:15-22, 73:24-75:17, 83:9-13, 97:20-22, 98:6-12, 100:23-101:6.)

On January 31, 2020, PSG invoiced Tyche for the Charter. (McLean Decl. ¶ 3(v), Ex. 5 (January 31, 2020 invoice and February 2020 email chain).) PSG agreed to Mr. Marek's requests to credit Tyche for certain items and Mr. Marek stated in an email that

---

[3] Tyche paid the $250,000 mobilization fee. (Counterclaim Ans. (Dkt # 22) ¶ 15.)

1   "[t]he additions are legit." (*Id.*)  The approved invoice included 20 days of charter hire at

2   $33,700 per day; one day at $33,700 for demobilization; and $11,775.11 for

3   "reimbursables." (*Id.* at 3.)  After a credit of $250,000 for the mobilization fee, the total

4   amount owed was $536,875.11, with payment due on March 1, 2020. (*Id.*)

5           Although Tyche subsequently acknowledged that payment of the invoiced amount

6   was due, it did not timely make payment.  (*See, e.g.*, McLean Decl. ¶ 3(vi), Ex. 6 (April

7   2020 emails from Tyche's president, Michael Frank).)  On July 1, 2020, Tyche made a

8   partial payment of $75,000 to PSG.  (Compl. ¶ 19; Ans. (Dkt. # 14) ¶ 19.)  In September

9   2020, Tyche again acknowledged that it still owed payment to PSG but stated that it was

10  in the process of raising additional capital.  (McLean Decl. ¶ 3(vii), Ex. 7 (September 19,

11  2020 email from Mr. Frank, stating, "[Y]ou will be paid.  It is not an issue of if, it is only

12  an issue of when.").)  Nevertheless, Tyche did not make any further payments to PSG.

13  (*See* Ans. at 8-15 ("Counterclaims") ¶ 19, Counterclaim Ans. ¶ 19 (acknowledging that

14  Tyche paid PSG $325,000 in total).)

15          According to PSG, Tyche has "seized on the existence of" data collected by the

16  R/V OCEAN TITAN's ROV during the survey voyage "to avoid its obligations under the

17  [C]harter." (PSG Mot. at 7.)  Specifically, Tyche asserts that that PSG materially

18  breached the Charter by "failing to turn over all of the [d]ata" collected by the ROV to

19  Tyche.  (Counterclaims ¶¶ 19, 24, 32.)  There is no language in the Charter, however, that

20  places any obligation on PSG to collect, store, process, report, or provide any type of data

21  to Tyche.  (*See generally* Charter.)  To the contrary, the only provisions in the Charter

22  regarding data state that any data collected during the term of Charter would remain

confidential and that PSG could retain a copy of the survey data. (*Id.* at 20, ¶ 36; *id.* at 34.) In any event, PSG did provide data collected during the voyage to Tyche. (Marek Dep. at 86:22-87:5, 102:2-23, 116:15-21 (acknowledging he received data from PSG).)

PSG filed this action against Tyche (*in personam*) and the data collected during the term of the Charter (*in rem*) on December 30, 2021. (Compl.) PSG alleges that Tyche breached the Charter by failing to pay it the full amount owed for its services and alleges claims under the Charter for money due, attorneys' fees, and maritime liens. (*Id.* ¶¶ 22-33.) On February 17, 2022, Tyche answered the complaint; asserted affirmative defenses; and alleged counterclaims for breach of contract, breach of the implied covenant of good faith, attorney's fees, violation of the Washington Consumer Protection Act ("WCPA"), ch. 19.86 RCW, and unjust enrichment. (*See* Ans.; Counterclaims.) Tyche asserts that it had the right to withhold payment because PSG breached the Charter Party by failing to turn over the data collected during the survey voyage. (Counterclaims ¶¶ 13-16.)

PSG originally filed this motion for summary judgment on April 6, 2023, nearly five months before the dispositive motions deadline. (PSG Mot.; Sched. Order. (Dkt. # 21) (setting the dispositive motions deadline on August 29, 2023).) It asks the court to grant it summary judgment in its favor on its claim that Tyche is liable for the unpaid balance due under the Charter Party, accrued interest, and attorneys' fees and costs. (PSG Mot.[4]) It also seeks summary judgment in its favor on Tyche's counterclaims.

---

[4] PSG does not move for summary judgment on its claim for a maritime lien against the cargo, *in rem*. (*See generally* PSG Mot.) Based on the language of PSG's motion and proposed

1   (*Id.*)  On April 24, 2023, Tyche filed a timely response in which it asked the court to

2   either deny or defer deciding the motion and grant it leave to conduct additional

3   discovery under Federal Rule of Civil Procedure 56(d).[5]  (4/24/23 Resp. (Dkt. # 34).)

4   Tyche represented that the depositions of four witnesses were "essential" for Tyche to

5   gather information necessary to oppose PSG's motion.  (*See id.* at 5-7 (listing issues

6   about which Tyche intended to seek discovery).)  It did not offer any substantive

7   opposition to PSG's arguments in favor of summary judgment; rather, it relied solely on

8   its request for Rule 56(d) relief.  (*See id.*)

9         On May 1, 2023, the court granted Tyche's request to conduct additional

10   discovery pursuant to Rule 56(d) and denied PSG's motion for summary judgment

11   without prejudice.  (5/1/23 Order (Dkt. # 38).)  The court granted Tyche 45 days in which

12   to take the depositions of the four witnesses who, Tyche asserted, possessed information

13   relevant to its opposition to Tyche's motion for summary judgment.  (*Id.* at 7.)  The court

14   also granted PSG leave to renew its motion for summary judgment at any time after those

15   45 days elapsed.  (*Id.*)

16         On June 23, 2023, PSG filed notice that it was renewing its April 6, 2023 motion

17   for summary judgment in accordance with the court's May 1, 2023 order.  (6/22/23 Not.

18   (Dkt. # 39).)  In its notice, it stated that it had no need to submit additional briefing on its

19

20   order (Dkt. # 32-1), the court interprets that omission as an abandonment of the claim at
summary judgment.

21     [5] Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for
specified reasons, it cannot present facts essential to justify its opposition, the court may:

22   (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or
to take discovery; or (3) issue any other appropriate order."  Fed. R. Civ. P. 56(d).

motion because Tyche had conducted no discovery since the court issued its order.  (*Id.* at 2; *see also* 6/22/23 Min. Order (Dkt. # 40) (reviving and re-noting PSG's motion for summary judgment).)

On July 6, 2023, Tyche's attorneys moved for leave to withdraw at the request of Tyche's president, Mr. Frank.  (Mot. to Withdraw (Dkt. # 41); *see* 7/6/23 Frank Decl. (Dkt. # 41-1) ¶ 7 (stating that he had instructed Tyche's attorneys "that they must immediately file a motion seeking to withdraw as counsel of record in this matter").)  In support of the motion to withdraw, Mr. Frank represented that Tyche is insolvent and can no longer afford to litigate this action or compensate its attorneys.  (7/6/23 Frank Decl. ¶¶ 2-3.)  As a result, Tyche was unable to conduct the depositions the court authorized in its May 1, 2023 order.  (*Id.* ¶¶ 4-5 (citing 5/1/23 Order).)  Tyche hired Florida insolvency counsel to file a Petition for an Assignment for the Benefit of Creditors ("Petition") in the Eleventh Judicial Circuit Court of Florida.  (*Id.* ¶ 6 (stating that Tyche is a Florida corporation); 7/10/23 Frank Decl. (Dkt. # 43) ¶ 5; *id.*, Ex. A ("Petition").)  According to Tyche, an Assignment for the Benefit of Creditors ("ABC") enables a professional fiduciary to "take possession of, protect and preserve, all of the assets of Tyche, and liquidate the assets of Tyche pursuant to §727.114, Florida Statutes."  (7/10/23 Frank Decl. ¶ 5.)  In accordance with the ABC, Tyche has transferred its assets and liabilities to the assignee/fiduciary, Heller and Company, Inc., which is "vested with the responsibility of establishing the priority of claims against Tyche."  (*Id.*; Cross-Mot. at 2.)

On July 10, 2023, while Tyche's attorneys' motion to withdraw was pending, Tyche filed its combined response to PSG's motion for summary judgment and

1    cross-motion for dismissal of this action.  (Cross-Mot.)  Tyche argues that, due to the

2    insolvency action, PSG's "claims, causes of action, and Motion are now moot, and must

3    be resolved in Florida with the Court mandated assignee-fiduciary." (*Id.* at 2-3.)  Again,

4    Tyche does not respond substantively to the arguments PSG makes to support its motion

5    for summary judgment.  (*See generally id.*)  Rather, it asks the court to "give no further

6    consideration to" PSG's motion and "dismiss this case in its entirety, with prejudice"

7    because "no active case or controversy now exists, and no relief can be awarded." (*Id.* at

8    7.)  PSG filed a timely reply in support of its motion for summary judgment on July 14,

9    2023.  (PSG Reply.)

10          The court granted Tyche's attorneys' motion to withdraw on July 19, 2023.

11   (7/19/23 Order (Dkt. # 46).)  Because a corporation cannot proceed *pro se* in federal

12   court, *see* Local Rules W.D. Wash. LCR 83.2(b)(4), the court ordered Tyche to find

13   substitute counsel by August 31, 2023, or risk dismissal of its counterclaim and/or entry

14   of default.  (7/19/23 Order.)  The court also noted that it intended to decide the

15   cross-motions in due course because Tyche's motion to dismiss on the basis of mootness

16   implicates the court's jurisdiction.  (*Id.*)  Tyche did not file a reply in support of its cross-

17   motion.  (*See* Dkt.)

18                              **III.   ANALYSIS**

19          For the reasons set forth below, the court DENIES Tyche's cross-motion to

20   dismiss this matter as moot and GRANTS PSG's motion for summary judgment.

21

22

**A.      This Matter is Not Moot**

Tyche contends that this matter is moot, and therefore must be dismissed, "based on Tyche's insolvency and commencement of an insolvency action in Florida." (Cross-Mot. at 1.)  The court disagrees.

A federal court does not have jurisdiction "to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it."  *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)).  Mootness deprives federal courts of subject matter jurisdiction because federal courts are empowered to hear only cases and controversies.  U.S. Const. art. III § 2; *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974).

There  is "no case or controversy, and a suit becomes moot, 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'"  *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)).  A case becomes moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party."  *Id.* at 172 (citation omitted).  The party alleging mootness bears a "heavy" burden to establish that the court can provide no effective relief.  *See Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir. 2012) (quoting *Forest Guardians v. Johanns*, 450 F.3d 455, 461 (9th Cir. 2006)).

Tyche asserts that "it is no longer the real-party in interest" and "lacks any cognizable interest in the outcome of this case" because it has transferred all of its assets,

1    liabilities, claims, and causes of action against it to the assignee/fiduciary pursuant to the

2    ABC.  (Cross-Mot. at 4-5 (citing *Cnty of Los Angeles v. Davis*, 440 U.S. 625, 631

3    (1979)).)  Tyche also argues that the court cannot grant any effectual relief to PSG

4    because Tyche no longer holds any assets and the assignee/fiduciary is not a party to this

5    action.  (*Id.* (citing *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016)); *id.* at 6-7.)

6    As a result, according to Tyche, this matter is moot, and PSG must present its claims in

7    the ABC in Florida.  (*Id.* at 4-5.)

8         As PSG points out, however, Tyche's assignment of its assets pursuant to the ABC

9    does not stay PSG's claims, discharge Tyche's liability, or alter the real party in interest

10   for the purpose of this litigation.  (Cross-Mot. Resp. at 3-7.)  An ABC functions as "a

11   state-law alternative to bankruptcy" that provides a "simpler and cheaper process" for

12   liquidating assets.  *Ullrich v. Welt*, 810 F.3d 781, 789 (11th Cir. 2015) (interpreting

13   Florida's ABC statute).  An ABC "[does] not limit the ability of third parties to assert

14   their contractual right[s] . . . during the [ABC's] liquidation process."  *Akin Bay Co., LLC*

15   *v. Von Kahle*, 180 So. 3d 1180, 1182-83 (Fla. Dist. Ct. App. 2015); *see also Mason*

16   *Tenders Dist. Council Welfare Fund v. Logic Constr. Corp.*, 7 F. Supp. 2d 351, 357 n.36

17   ("An assignment for the benefit of creditors is distinguishable from a federal bankruptcy

18   in that the debtor-assignor remains liable . . . .").  Indeed, Florida's ABC act protects

19   assets from execution; it does not protect the assigning party from judgment.  *Moffatt &*

20   *Nichol, Inc. v. B.E.A. Int'l Corp.*, 48 So. 3d 896, 899 (Fla. Dist. Ct. App. 2010).

21        In addition, state statutes that purport to allow debtors a discharge of debts are

22   preempted by federal bankruptcy law.  *Sherwood Partners, Inc. v. Lycos, Inc.*, 394 F.3d

1   1198, 1203 (9th Cir. 2005) (stating that state laws are preempted "simply because the

2   ability to grant a discharge is 'one of the principal requisites of a true bankruptcy law'"

3   (quoting *Stellwagen v. Clum*, 245 U.S. 605, 615 (1918))).  Thus, to the extent Tyche

4   argues that the ABC functions to stay this litigation or to discharge Tyche's debts, those

5   arguments are misplaced.  None of the cases Tyche cites in its cross-motion stand for the

6   proposition that the filing of an ABC stays or moots claims that are being litigated in

7   federal court, nor do any of those cases support Tyche's assertion that such claims must

8   be resolved in the ABC.  (*See* Cross-Mot. at 3-5 (citing cases).)

9        Tyche also argues that this case is moot under the doctrine of prudential mootness,

10  which permits a court to "dismiss an appeal not technically moot if circumstances have

11  changed since the beginning of litigation that forestall any occasion for meaningful

12  relief."  (Cross-Mot. at 5-6); *Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137, 1142

13  (9th Cir. 2009); *see also Maldonado v. Lynch*, 786 F.3d 1155, 1161 n.5 (9th Cir. 2015)

14  (noting that the Ninth Circuit has applied this doctrine "only in the bankruptcy context,

15  when there are no assets left to distribute").  As the authorities PSG cites in its response

16  make clear, however, this court remains the appropriate forum in which to decide PSG's

17  claims.  (*See* Cross-Mot. Resp. at 9-11.)  Because the court can provide meaningful relief

18  to PSG, the court declines to apply prudential mootness to dismiss PSG's claims.

19       Finally, the court agrees with PSG that Tyche failed entirely to discuss PSG's

20  claims against the data *in rem* and that those claims cannot be adjudicated in the ABC.

21  (*See* Cross-Mot. Resp. at 8-9 (citing authorities holding that the federal courts have

22  exclusive jurisdiction over in rem actions under admiralty law).)

1    For the foregoing reasons, the court concludes that Tyche has failed to meet its

2 "heavy" burden to establish that the court cannot provide any effective relief in this

3 action. *See Karuk Tribe*, 681 F.3d at 1017.  Therefore, the court DENIES Tyche's

4 cross-motion to dismiss on mootness grounds.

5 **B.    PSG is Entitled to Summary Judgment**

6    Under Federal Rule of Civil Procedure 56, either "party may move for summary

7 judgment, identifying each claim or defense—or the part of each claim or defense—on

8 which summary judgment is sought."  Fed. R. Civ. P. 56(a).  Summary judgment is

9 appropriate if the evidence, when viewed in the light most favorable to the non-moving

10 party, demonstrates "that there is no genuine dispute as to any material fact and the

11 movant is entitled to judgment as a matter of law."  *Id.*; *see Celotex Corp. v. Catrett*, 477

12 U.S. 317, 322 (1986).  A dispute is "genuine" if "the evidence is such that a reasonable

13 jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*,

14 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit

15 under the governing law."  *Id.*

16    The moving party bears the initial burden of showing that there is no genuine

17 dispute of material fact and that it is entitled to prevail as a matter of law.  *Celotex*, 477

18 U.S. at 323.  If the moving party meets this burden, the burden then shifts to the

19 nonmoving party to identify specific facts from which a factfinder could reasonably find

20 in the nonmoving party's favor.  *Id.* at 324; *Anderson*, 477 U.S. at 250.  The court is

21 "required to view the facts and draw reasonable inferences in the light most favorable to

22 the [nonmoving] party."  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  Where, as here, the

1   nonmoving party "fails to properly support an assertion of fact or fails to properly address

2   another party's assertion of fact . . . the court may . . . consider the fact undisputed for

3   purposes of the motion." Fed. R. Civ. P. 56(e)(2); *see Heinemann v. Satterberg*, 731 F.3d

4   914, 917 (9th Cir. 2013) ("If there is a failure to respond, [Rule 56] 'authorizes the court

5   to consider a fact as undisputed.'" (citing Fed. R. Civ. P. 56 advisory committee's notes

6   to 2010 amendment)). Nevertheless, the court must still "assess whether 'the motion and

7   supporting materials' entitle the movant to summary judgment." *Id.* (quoting Fed. R.

8   Civ. P. 56(e)(3)).

9       PSG and Tyche agreed that the Charter would be governed by the general

10   maritime law of the United States, or by Washington law if there is no applicable general

11   maritime rule of law. (Charter at 29.) Under federal maritime law, "[c]ontract terms are

12   to be given their ordinary meaning, and when the terms of a contract are clear, the intent

13   of the parties must be ascertained from the contract itself." *Flores v. Am. Seafoods Co.*,

14   335 F.3d 904, 910 (9th Cir. 2003). "Whenever possible, the plain language of the

15   contract should be considered first." *Id.* "[A] court should not look beyond the written

16   language of the contract to determine the intent of the parties unless the disputed

17   language is ambiguous." *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 (5th Cir.

18   1986).

19       Tyche has not disputed any portion of the factual narrative set forth by PSG. (*See*

20   Cross-Mot.) Thus, the court considers the following facts undisputed for the purpose of

21   deciding this motion. (*See supra* § II); Fed. R. Civ. P. 56(e)(2); *Heinemann*, 731 F.3d at

22   917. Tyche agreed to charter the R/V OCEAN TITAN for $33,700 per day for the 20

ORDER - 13

days between November 29 and December 20, 2019; a mobilization fee of $250,000, which Tyche paid; and a maximum two days of demobilization at $33,700 per day.  The parties further agreed that payment of invoiced amounts was due within 30 days; that unpaid amounts would be subject to 12% interest per annum; and that, in the event of a dispute, the substantially prevailing party would be entitled to reasonable attorney's fees and costs.  PSG timely delivered the vessel.  Tyche confirmed that PSG's performance was adequate and that all necessary equipment was aboard during the term of the charter.  Despite the absence of language in the Charter regarding the delivery, processing, or reporting of survey data collected during the voyage, PSG nevertheless provided data to Tyche.  On January 31, 2020, PSG sent Tyche an invoice and agreed to credits against the invoiced amount as requested.  Tyche approved the invoiced amount of $536,875.11.  Although Tyche failed to pay the invoice when due, it repeatedly acknowledged that it owed payment to PSG and made a partial payment of $75,000 in July 2020.  Tyche has not made any further payments toward the balance owed.

Based on these undisputed facts, the court concludes that PSG performed its obligations under the plain, unambiguous language of the Charter, and that it did not materially breach the Charter by failing to deliver survey data.  *See Flores*, 335 F.3d at 910; *Fontenot*, 791 F.2d at 1214.  The court further concludes that Tyche materially breached the Charter by failing to make full payment of the invoiced amount.  As a result, the court GRANTS summary judgment in PSG's favor on (1) its claims for money due, prejudgment interest, and reasonable attorneys' fees and costs under the Charter; and (2) Tyche's claims for breach of contract, breach of the implied covenant of good faith,

1   attorneys' fees, and unjust enrichment.

2        The court also GRANTS PSG's motion for summary judgment on Tyche's claim

3   for violation of the WCPA.  (*See* Counterclaims ¶¶ 31-36.)  To prevail on a WCPA claim,

4   a plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or

5   commerce, (3) impacting the public interest, (4) injury to the plaintiff's business or

6   property, and (5) causation.  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins.*

7   *Co.*, 719 P.2d 531, 533 (Wash. 1986); RCW 19.86.020.  Tyche alleges in support of this

8   claim that PSG violated the WCPA by "wrongfully failing to turn over all of the Data in

9   violation of its agreements with TYCHE, and billing TYCHE for more days of charter

10  than were actually provided." (Counterclaims ¶ 32.)  The undisputed facts, however,

11  establish that PSG did not violate the Charter by failing to turn over the data; that Tyche's

12  vice president acknowledged that the survey voyage lasted 20 days; and that Tyche

13  approved the amount of the invoice.  (*See supra* § II.)  Accordingly, because Tyche

14  cannot prove all of the elements of its WCPA claim, the court GRANTS summary

15  judgment in PSG's favor on that claim.

16              **IV.    CONCLUSION**

17       For the foregoing reasons, the court DENIES Tyche's cross-motion to dismiss this

18  matter as moot (Dkt. # 42) and GRANTS PSG's motion for summary judgment (Dkt.

19  # 32) in its entirety.  PSG is AWARDED the remaining $461,875.11 Tyche owes under

20  the Charter ($536,875.11 less the $75,000 paid by Tyche in July 2020); prejudgment

21  interest running at 12% per annum from March 1, 2020; and reasonable attorneys' fees

22  and costs.  PSG is ORDERED to file, by no later than **August 21, 2023**, an accounting of

1    the currently owed prejudgment interest and a motion for reasonable attorneys' fees and

2    costs.

3          Dated this 10th day of August, 2023.

4

5

6                                                    JAMES L. ROBART
                                                     United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 16