1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10  PACIFIC SURVEY GROUP, LLC,          CASE NO. C21-1712JLR

11                 Plaintiff /          ORDER
                   Counter-Defendant,

12        v.

13  TYCHE HIGH SEAS CAPITAL
    CORP., et al.,

14

15                 Defendants /
                   Counter-Claimants.

16

17            **I.    INTRODUCTION**

18      Before the court is Plaintiff / Counter-Defendant Pacific Survey Group, LLC's

19  ("PSG") motion for entry of judgment against Defendant / Counter-Claimant Tyche High

20  Seas Capital Corp. ("Tyche").  (Mot. (Dkt. # 49).)  Tyche, which is currently

21  unrepresented in this action, did not respond to PSG's motion.  (*See* 7/19/23 Order (Dkt.

22  # 46) (granting Tyche's former attorneys' motion for leave to withdraw and ordering

1  Tyche to find substitute counsel, if any, by August 31, 2023); Dkt.)  The court has

2  considered PSG's submissions, the relevant portions of the record, and the governing

3  law.  Being fully advised, the court GRANTS in part PSG's motion for entry of

4  judgment.

5                    **II.    BACKGROUND AND ANALYSIS**

6          This case arises from a time charter agreement ("Charter") between PSG, the

7  owner of the research vessel R/V OCEAN TITAN, and Tyche, the charterer of that

8  vessel.  (*See* Compl. (Dkt. # 1); 4/6/23 McLean Decl. (Dkt. # 33) ¶ 3(ii), Ex. 2

9  ("Charter").)  The court set forth the factual and procedural background of this case in

10  detail in its August 10, 2023 order granting PSG's motion for summary judgment and

11  denying Tyche's cross-motion to dismiss.  (8/10/23 Order (Dkt. # 48) at 2-8.)  Therefore,

12  the court focuses here on the background relevant to the instant motion.

13          In its August 10, 2023 order, the court concluded, based on the undisputed facts in

14  the record, that PSG had performed its obligations under the plain, unambiguous

15  language of the Charter and did not materially breach the charter by failing to deliver

16  certain data collected by the R/V OCEAN TITAN during the term of the Charter.[1]  (*Id.* at

17  12-15.)  As a result, the court granted summary judgment in PSG's favor on (1) its claims

18  for money due, prejudgment interest, and reasonable attorneys' fees and costs as provided

19  by the Charter and (2) Tyche's claims for breach of contract, breach of the implied

20

21          [1] PSG originally named this data as a Defendant *in rem*.  (*See* Compl. (Dkt. 1).)  The
   court interpreted PSG's failure to move for summary judgment on its claim for a maritime lien
   on the data as an abandonment of its sole claim against the Defendant *in rem*.  (8/10/23 Order

22  (Dkt. # 48) at 5 n.4.)  PSG has not taken issue with that interpretation.  (*See* Mot.; Dkt.)

1  covenant of good faith, attorney's fees, unjust enrichment, and violation of the

2  Washington Consumer Protection Act, ch. 19.86 RCW.  (*Id.*)  The court awarded PSG

3  "the remaining $461,875.11 Tyche owes under the Charter ($536,875.11 less the $75,000

4  paid by Tyche in July 2020); prejudgment interest running at 12% per annum from March

5  1, 2020; and reasonable attorneys' fees and costs" and ordered PSG to file an accounting

6  of the accrued prejudgment interest and a motion for reasonable attorneys' fees and costs.

7  (*Id.* at 15-16.)

8       PSG timely filed this motion in accordance with the court's August 10, 2023

9  order.  (Mot.)  PSG seeks an award of $192,544.98 in prejudgment interest accrued up to

10  August 21, 2023, and $70,534.97 in attorney's fees, in addition to the $461,875.11 unpaid

11  balance owed under the Charter.  (8/21/23 McLean Decl. (Dkt. # 50) ¶ 3, Ex. 1

12  (calculation of prejudgment interest); *id.* ¶ 6 (requesting fees discounted from $85,096.50

13  to $70,534.97); *see also* Prop. Order (Dkt. # 49-1).)  It also requests an award of

14  post-judgment interest to run at 12% per annum under the parties' Charter and federal

15  law.  (Mot. at 2.)  Below, the court considers each element of PSG's requested award.

16  **A.    Prejudgment Interest**

17       The court concluded in its August 10, 2023 order that PSG was entitled to

18  prejudgment interest under the terms of the Charter.  (8/10/23 Order at 14-15.)  The court

19  agrees with PSG's calculation that $192,544.98 in prejudgment interest accrued between

20  March 1, 2020, and August 21, 2023.  (*See* 8/21/23 McLean Decl., Ex. 1; *see also* 4/6/23

21  McLean Decl. (Dkt. # 33) ¶ 3(v), Ex. 5 at 3 (stating payment on the amount owed under

22

1    the Charter was due 30 days after January 31, 2020).)  Therefore, the court GRANTS

2    PSG's request for an award of prejudgment interest in that amount.

3    **B.    Attorneys' Fees**

4          The court also concluded in its August 10, 2023 order that PSG is entitled to an

5    award of attorneys' fees and costs as provided in the parties' Charter.  (8/10/23 Order at

6    14-15.)  PSG asserts that it has incurred a total $85,096.50 in attorneys' fees billed to

7    date; $5,733.00 in attorneys' fees for work in progress for which it has not yet been

8    billed; and $3,614.40 in costs in litigating this matter.  (8/21/23 McLean Decl. ¶ 5.)  PSG

9    does not, however, seek an award of litigation costs; and it states that it has deducted

10   from its fee request certain fees that it incurred when it intervened in a related Alaska

11   lawsuit for reasons related to its discovery efforts in this case.  (*Id.* ¶ 6.)  As a result, PSG

12   seeks a discounted fee award of $70,534.97.  (*Id.*)

13         To determine whether the requested fees are reasonable, the court applies the

14   "lodestar" method.  *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir.

15   2008).  The court begins by finding the "lodestar," which is calculated by multiplying

16   "the number of hours reasonably expended on the litigation" by "a reasonable hourly

17   rate."  *Id.* (quoting *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir.

18   2001)).  Although the resulting figure is presumptively reasonable, the court may, if

19   circumstances warrant, adjust the lodestar figure up or down based on a number of

20   additional factors that have not been subsumed in the initial lodestar calculation.  *Id.* at

21   977-78 (referencing the factors enumerated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d

22   67, 70 (9th Cir. 1975)).

1    To determine whether an hourly rate is reasonable, courts consider "the rate

2    prevailing in the community for similar work performed by attorneys of comparable skill,

3    experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11

4    (9th Cir. 1986).  Courts generally use the rates of attorneys practicing in the forum

5    district for comparison.  *See Gates v. Deukmejian*, 987 F.2d 1392, 1405-06 (9th Cir.

6    1992); *see also Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (noting that court

7    may rely on its own knowledge and experience regarding fees charged in the area in

8    which it presides).  Here, attorneys Donald K. McLean and Mark Krisher billed PSG at a

9    rate of $350 per hour and attorney Meliha Jusupovic billed at a rate of $225 per hour.

10   (8/21/23 McLean Decl. ¶¶ 2, 4.)  Based upon the court's familiarity with the rates

11   charged by attorneys in the Seattle legal community who represent clients in similar cases

12   and who have similar qualifications the court finds that the rates charged by PSG's

13   attorneys are reasonable.

14       To determine a reasonable number of hours to be compensated, the court must

15   consider "whether, in light of the circumstances, the time could reasonably have been

16   billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir.

17   2008).  The hours claimed by a party may be reduced by the court if "the documentation

18   of the hours is inadequate"; "if the case was overstaffed and hours are duplicated"; or "if

19   the hours expended are deemed excessive or otherwise unnecessary." *Chalmers*, 796

20   F.2d at 1210; *see also McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009)

21   (stating that the court may exclude hours that were not reasonably expended, such as

22   those "that are excessive, redundant, or otherwise unnecessary" (quoting *Hensley v.*

1 *Eckerhart*, 461 U.S. 424, 433-34 (1983))).  When faced with a voluminous fee

2 application, the court has the "authority to make across-the-board percentage cuts either

3 in the number of hours claimed or in the final lodestar figure 'as a practical means of

4 trimming the fat from a fee application.'"  *Gates*, 987 F.2d at 1399 (quoting *N.Y. State*

5 *Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)).

6       Here, although PSG's attorneys have provided the court with detailed billing

7 records, they have not summarized for the court the number of hours they billed on this

8 matter.  (*See* 8/21/23 McLean Decl. ¶ 7, Ex. 2 ("Billing Records").)  The court has

9 reviewed the billing records and concludes that PSG's attorneys engaged in very little

10 block-billing or duplication of efforts.  (*See generally* Billing Records.)  The court is

11 unable to calculate a lodestar figure, however, because it cannot determine the total

12 number of hours PSG's attorneys billed.  Thus, in light of the voluminous records

13 provided and the absence of summary data that would enable the court to calculate the

14 lodestar, the court concludes that an across-the-board cut of 10% of the requested fee

15 award is appropriate.  *See Gates*, 987 F.2d at 1399.  Accordingly, the court GRANTS in

16 part PSG's motion for an attorneys' fee award and AWARDS PSG attorneys' fees in the

17 amount of $63,481.47.

18 **C.     Post-Judgment Interest**

19       PSG also requests post-judgment interest at a rate of 12% per annum.  (Mot. at 2.)

20 PSG did not request post-judgment interest as a form of relief in its complaint.  (*See*

21 *generally* Compl.)  Nevertheless, "[u]nder the provisions of 28 U.S.C. § 1961,

22 post-judgment interest on a district court judgment is mandatory."  *Air Separation, Inc. v.*

1   *Underwriters at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1995); *see also Berholtz v.*

2   *P4 Meditech Analytics, LLC*, 600 F. Supp. 3d 1128, 1136 (S.D. Cal. 2022) (stating that

3   post-judgment interest is automatically applied in federal cases, regardless of whether it

4   was prayed for in the complaint).  Post-judgment interest applies to the entire judgment,

5   including principal, prejudgment interest if applicable, attorneys' fees, and costs.  *Air*

6   *Separation*, 45 F.3d at 291.  Post-judgment interest "shall be calculated from the date of

7   the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity

8   Treasury yield, as published by the Board of Governors of the Federal Reserve System,

9   for the calendar week preceding . . . the date of the judgment." 28 U.S.C. § 1961(a).  As

10  of September 14, 2023, that rate is 5.42%.

11          The only support PSG provides for the proposition that it is entitled to a 12%

12  post-judgment interest rate rather than the rate dictated by 28 U.S.C. § 1961(a) is a

13  citation to *Citicorp Real Estate v. Smith*, 155 F.3d 1097, 1108 (9th Cir. 1998).  (*See* Mot.

14  at 2.)  In that case, the parties mutually agreed, and the arbitrator's award provided, that

15  the interest rate in the parties' promissory note agreement would apply "after judgment

16  until collection." *Citicorp*, 155 F.3d at 1108.  PSG, however, has not directed the court to

17  any provision in the Charter that demonstrates the parties' mutual agreement that a 12%

18  interest rate would apply to the total amount of any judgment.  (*See generally* Mot.)

19  Therefore, the court GRANTS in part PSG's request for post-judgment interest and

20  AWARDS PSG post-judgment interest at 5.42% per annum, in accordance with 28

21  U.S.C. § 1961(a).

22

1

## III.   CONCLUSION

2       For the foregoing reasons, the court GRANTS in part PSG's motion for entry of

3   judgment (Dkt. # 49).  The court enters judgment in PSG's favor and AWARDS PSG the

4   following remedies:

5       1.      Breach of contract damages in the amount of $461,875.11;

6       2.      Prejudgment interest in the amount of $192,544.98;

7       3.      Attorneys' fees in the amount of $63,481.47; and

8       4.      Post-judgment interest at a rate of 5.42% per annum in accordance with 28

9               U.S.C. § 1961(a).

10      PSG is ORDERED to serve a copy of this order and the final judgment on Tyche.

11      Dated this 14th day of September, 2023.

12

13

14      JAMES L. ROBART
        United States District Judge

15

16

17

18

19

20

21

22

ORDER - 8